AMERICAN LAWYERS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23214.   Promulgated November 18, 1930.

*Alfred C. Frodel, Esq.*, and *Dean Hill Stanley, Esq.*, for the petitioner.

*Arthur Carnduff, Esq.*, for the respondent.

372

OPINION.

LOVE: The question to be answered in this case is whether or not petitioner comes within the purview of the definition given by Congress to "personal service corporations," as contained in section 200 (5) of the Revenue Act of 1921. The pertinent part of that section is:

(5) The term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor.

An analysis of the quoted statute discloses that it prescribes three essential elements, viz:

1. The income must be derived in such a way as to be ascribed primarily to the activities of the principal stockholders.

2. Those stockholders themselves must be regularly engaged in the active conduct of the affairs of the corporation.

3. Capital (either borrowed or invested) must not be a material income-producing factor.

In the instant case the evidence is clear and positive that all four of the stockholders were regularly, every day, actively engaged in the affairs of the corporation. Breding devoted his whole time in field work. The two Grossmans and Loeser each devoted a part of practically every day to the home office end of the work, which embraced the formation of policies, the selection of receiving agents, the handling of complaints and various other executive duties. We have no hesitancy in finding and holding that the four stockholders were each regularly engaged in the active conduct of the affairs of the corporation. That those three men were conducting a general law practice does not preclude a holding that they were at the same time regularly and actively engaged in the conduct of the affairs of the petitioner corporation. *New Orleans Shipwright Co., Ltd.* v. *Commissioner*, 27 Fed. (2d) 214; *Fuller & Smith* v. *Routzahn*, 23 Fed. (2d) 959; and *MacMartin Advertising Agency, Inc.*, 11 B. T. A. 162.

Was petitioner's income derived in such a way that it may, in contemplation of the statute, be ascribed primarily to the activities of those four stockholders? We do not deem it material that petitioner had on its pay roll 23 employees to perform the necessary clerical work. Those employees, performing that kind of work were not, in contemplation of the statute here involved, income-producing factors.

Reserving, and not now considering the question as to whether capital was a material income-producing factor, we believe and so find and hold that the income of petitioner may be ascribed, primarily, to the activities of the four stockholders. *Moser & Wacker, Inc.*, 4 B. T. A. 1021; *Cocks-Clark Engraving Co.*, 8 B. T. A. 468; *F. Merges & Co.*, 11 B. T. A. 444; and *H. K. McCann Co.*, 14 B. T. A. 251.

We will now consider the question as to whether or not capital was a material income-producing factor. An examination of petitioner's balance sheet at the close of 1921 shows that its assets consisted of accounts receivable, cash, office furniture and fixtures, and good will. Petitioner's income for the taxable year amounted to $107,215.51, of which amount $94,199.82 was derived from fees charged receiving agents, $12,964.25 from " subscriptions " to the

guarantee fund, and $51.44 was interest on deposits. Petitioner used no borrowed funds. The $51.44 interest received, of course, is derived directly from the employment of capital, but is so negligible in amount that it may not be considered. The accounts receivable drew no interest and hence produced no income. In fact, those accounts were explained in argument to represent fees charged against receiving agents, in the annual fee amount, but payable in quarterly or other installments. The only item in the list of capital assets to which income may be ascribed is good will. That item is valued at $50,000 and we believe it had that value. We are also convinced that such good will, built up as it was through 20 years of effort and operations, constituted a material factor in producing petitioner's income during the taxable year.

The crucial question to be answered is, Was the good will such an asset as to be classed as *income-producing capital as contemplated by the statute here involved?* We do not believe that it is such an asset. To hold that good will is such an asset, would destroy the whole scheme of personal service corporations. Those corporations are taken out of the class of ordinary corporations for tax purposes, and made a class unto themselves, on the theory that a few stockholders, grouping themselves together and personally conducting the business, using their personal influence, popularity, and without the aid of money capital—in fact, capitalizing the confidence with which they inspire the public, obtain patronage and make income. It is just that kind of an organization that Congress meant to grant a concession to, a concession that allowed the income to be taxed as personal, and not as corporate income, because in fact it is income derived by and through the personal element in the corporate activity.

A different situation might exist, demanding an entirely different conclusion, if a group of stockholders purchased the assets and business of a going concern, and in such purchase had recognized and paid cash for an existing good will asset. In such a situation the purchase price of the good will would likely be held to be an investment of income-producing capital. Under the circumstances of the instant case, we hold that good will was not such capital. See *Alexander & Garrett* v. *United States*, 21 Fed. (2d) 547.

*Judgment will be entered for the petitioner.*